KAPIN PLLC
1133 Broadway, Suite 1001
New York, New York 10010
Telephone (212) 513-0500
Facsimile (866) 575-5019
mkapin@kapin.com
Michael J. Kapin, State Bar No. 260884

Attorneys for Plaintiff HIGHTIMES HOLDING CORP.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **HIGHTIMES HOLDING CORP., a Delaware corporation,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**ELEANORA KENNEDY, an individual residing in the State Of New York; MICHAEL KENNEDY FAMILY TRUST UNDER SECTION 2.4 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE); NON-EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE); EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE), and; DOES 1- 100,**<br><br>**Defendants.** | **Case No.:**<br><br>**COMPLAINT**<br><br>**1. Fraud (by Misrepresentation)**<br>**2. Fraud (by Omission)**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

COMES NOW, the plaintiff, HIGHTIMES HOLDING CORP. ("HTC" or "Plaintiff"), by and through the undersigned counsel of record for a cause of action against the defendants, ELEANORA KENNEDY ("Eleanora"), MICHAEL KENNEDY FAMILY TRUST UNDER SECTION 2.4 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE), NON-EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE) and EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE) (each a "Defendant" and collectively the "Defendants"), states and alleges as follows:

**I.**

**NATURE OF ACTION**

1. This is an action for fraud, both by misrepresentation and omission, arising out of the purchase of Trans-High Corporation in 2016 by HTC from the legacy shareholders of Trans-High Corporation ("THC").
2. THC is and was the owner of the "High Times" brand and its various cannabis industry businesses including the world-famous "High Times Magazine" and the "Cannabis Cup" events that take place thorough the world.
3. Among the legacy shareholders was Eleanora. Eleanora, acting for herself and as the trustee under her deceased husband's trust, the Michael Kennedy Trust, represented the second largest block of shares in THC (prior to the HTC acquisition).
4. At the time THC was sold to HTC, Eleanora made representations and material omissions about THC's pending contract litigation with its recently departed chief executive officer, David Kohl (the "Kohl Action"), which were material to HTC's purchase of THC.
5. In the Kohl Action, David Kohl sought millions of dollars in damages from THC.
6. In public records and express representations made in the THC purchase and sale agreement, Eleanora represented to HTC that THC had valid defenses to the Kohl Action.

7. Subsequent to HTC's purchase of THC in December 2016, HTC has learned that Eleanora's representations were demonstrably false.
8. Subsequent to HTC's purchase of THC in December 2016, HTC has learned that Eleanora's omitted material information pertaining to the Kohl Action.
9. As set forth below, these false and misleading misrepresentations and omissions on the part of Eleanora constitute civil fraud.
10. As set forth below, HTC has been damaged in an amount believed to be in excess of ten million dollars ($10,000,000.00).

**II.**

**PARTIES**

11. Plaintiff Hightimes is a Delaware corporation with its principal place of business at 2110 Narcissus Court, Venice, California 90291.
12. Defendant Eleanora is an individual residing in the State of New York.
13. Upon information and belief, Defendant MICHAEL KENNEDY FAMILY TRUST UNDER SECTION 2.4 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE) ("Trust 1") is a trust formed under the laws of the State of New York.
14. Upon information and belief, NON-EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE) ("Trust 2") is a trust formed under the laws of the State of New York.
15. Upon information and belief, EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE) ("Trust 3") is a trust formed under the laws of the State of New York.
16. Upon information and belief, Trust 1, Trust 2 and Trust 3 are the successor trusts to the Michael Kennedy Trust, and were formed sometime after Mr. Kennedy's passing in 2016.
17. The true names and capacities, whether individual, corporate, associate or otherwise of the defendants named herein as Does 1 through 100, inclusive, are unknown to Plaintiff. Accordingly, Plaintiff sues these defendants by their fictitious names and will seek leave to amend this complaint to show these defendants' true names and capacities when such

information has been ascertained. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named defendants is responsible in some manner for the events and occurrences alleged herein, and that the fictitiously named defendants directed, caused or contributed to Plaintiff's damages. Plaintiff is informed and believes and thereupon alleges that Does 1 through 100, inclusive, acted as the agents, employees, co-venturers, or partners of the named Defendants herein, and Does 1 through 100, inclusive, while acting in the course and scope of their agency, employment, co-venture, or partnership, performed the acts and conduct hereinafter alleged and that said acts and conduct were ratified and approved by Defendants, and each of them.

## III.

## <u>JURSIDICTION AND VENUE</u>

18. This action is brought on the basis of diversity of citizenship of the parties pursuant to the provisions of 28 U.S.C. § 1332. Plaintiff is incorporated in the state of Delaware and has its principal place of business in California. Defendants' domicile is in the state of New York. Accordingly, there is a complete diversity of citizenship.

19. The amount in controversy exceeds $75,000.

20. Venue is proper in the United States District Court, Central District of California, pursuant to the provisions of 28 U.S.C. § 1391(b)(3), as the Defendants are subject to the personal jurisdiction of this Court, as Defendants, per Article VII: § 7.6(b) of the Agreement (defined below), expressly and irrevocably consented and submitted to the jurisdiction of any federal court located within the State of California in connection with any legal proceeding relating to the Agreement. Exhibit A, *Stock Purchase Agreement*, Article VII: § 7.6(b). Plaintiff selects this District Court as its principal place of business is within the map of this District Court.

## IV.

## <u>FACTUAL ALLEGATIONS</u>

21. On or about December 27, 2016, HTC entered into a contract entitled Stock Purchase Agreement (the "Agreement") with THC and the legacy shareholders of THC to purchase one

hundred percent (100%) of the issued and outstanding stock in THC. Attached hereto as **Exhibit A** is a true and correct copy of the Agreement (without schedules).

22. In exchange for purchasing the stock of THC, HTC agreed to pay the legacy shareholders of THC cash and stock totaling forty-two million dollars ($42,000,000).

23. As part of the Agreement, Eleanora, as one of the signatories to the Agreement, agreed to the terms of Article II: Representations and Warranties of the Company Stockholders, including § 2.12. That section provides:

> **2.12 Disclosure.** This Agreement, the schedules hereto and any certificate attached hereto or delivered in accordance with the terms hereof by or on behalf of such Company Stockholder in connection with the transactions contemplated herein, when taken together, do not contain any untrue statement of a material fact or omit any material fact necessary in order to make the statements contained herein and/or therein not misleading.

Exhibit A, *Stock Purchase Agreement*, Article II: § 2.12.

24. The Agreement provided for a disclosure of THC's liabilities to HTC (the "Disclosure Schedule"). Attached hereto as **Exhibit B** is the Agreement's Disclosure Schedule.

25. Section 3.7 of the Disclosure Schedule, entitled, 'Litigation, Threatened Litigation & Disputes' (hereinafter "Schedule 3.7") makes the following disclosure about the Kohl Litigation:

> **Schedule 3.7**
> **Litigation, Threatened Litigation & Disputes**
>
> - Pending Litigation:
>   - David Kohl: Summons, David Kohl ("Kohl") v. Trans High Corporation (Filed on September 30, 2016; Index No. 655200/2016):
>
>     David Kohl, former CEO of THC, sued THC alleging that THC breached his employment contract by terminating his employment contract with no justification and failing to pay over three years of his salary, bonuses and concomitant rights to an equity interest in THC.
>
>     THC has counterclaimed challenging the enforceability of the ultra vires "employment agreement" of Counterclaim Defendant, David Kohl ("Counterclaim Defendant"), or in the alternative seeking damages arising from Counterclaim Defendant's breach of the employment agreement. THC disputes the existence of a joint venture to which Kohl was entitled to receive equity. THC also seeks damages arising from Counterclaim Defendant's looting of THC resulting in THC's assets being diverted for Counterclaim Defendant's personal use without consideration or benefit to THC.

Exhibit B, *Disclosure Schedule*, Schedule 3.7

26. Attached hereto as **Exhibit C** is David Kohl's breach of contract complaint against THC.

27. Attached herein as **Exhibit D** is THC's answer with counterclaim complaint ("the Counterclaim Complaint").

28. Eleanora, on her own behalf and as trustee of the Michael Kennedy Trust, and one of the 'Selling Parties', upon signing the Agreement, represented and warranted, per Article II: § 2.12 of the Agreement, and otherwise, to HTC, that Schedule 3.7, and by extension, THC's answer and counterclaims in the Counterclaim Complaint, did not contain any untrue statements of material fact or omit any material fact necessary.

29. HTC, as purchaser of THC, and as an unrelated party to the Kohl Action, at the time the Agreement was executed, on and prior to December 27, 2016, had no knowledge and no way to acquire knowledge about the veracity of THC's defenses in the Kohl Action, except upon reliance on the 'Selling Parties' under the Agreement to give HTC a complete and true disclosure as to the merits of THC's defenses in the Kohl Action.

30. The Counterclaim Complaint, filed October 31, 2016, asserted facts in defense of David Kohl's claims and brought counterclaims against David Kohl, alleging in a publicly filed legal pleading that David Kohl had been properly terminated as chief executive officer of THC for cause in March 2016. See Exhibit D, *Counterclaim Complaint,* ⁋36 and owed THC damages for his wrongful conduct, among other things.

31. The Counterclaim Complaint, *inter alia*, claims David Kohl's failure in his job performance was cause for termination, as stated, among other places, in its Paragraph 18, in which THC claims Kohl 'failed to develop the High Times Growth and High Times Venture in breach of his employment obligations'. *Exhibit C, ⁋ 18.*

32. Additionally, the Counterclaim Complaint, among other things, claims David Kohl looted company assets, an act which THC claims as a cause for David Kohl's termination, as stated among other places, in its Paragraphs 27, 28, 29, and 30. See Id. at ⁋⁋ 27, 28, 29, and 30.

33. Specifically, Paragraph 27 and 28 of the Counterclaim Complaint claims that Kohl 'used the THC corporate credit card for personal expenses totaling in excess of $10,000.00', and that these expenses 'included charges related to a trip to Dubai wherein [Kohl] was performing services as a personal consultant on behalf of a different business entity'. Id at. ⁋⁋ 27, 28.

34. On November 27, 2018, Eleanora was deposed as a witness to give testimony in the Kohl Litigation. Annexed hereto as **Exhibit E** are excerpts of the Eleanora Kennedy Deposition, Day One, transcript ("the Deposition").

35. Eleanora testified in the Deposition that she had reason to believe that Kohl had not been fired for cause, contrary to representations made to HTC in the Agreement that Kohl had been terminated for cause, as stated in Schedule 3.7, and by extension, the Counterclaim Complaint.

36. Throughout the Deposition, Eleanora either indicates that the causes for Kohl's termination were either false, "exaggerations", or that Eleanora had no personal knowledge of those causes of termination:

Page 87

E. KENNEDY
A They were exaggerations.
Q Do you recall what the source of the exaggerations was?
A Whatever he was accusing David of.

Exhibit E, *Kennedy Deposition, Day One*, p. 87, lines 1-6

37. In the Deposition, Kohl's counsel introduces 'plaintiff's exhibit 9', an email from Eleanora regarding Kohl's termination as CEO of THC, which reveals that Eleanora believed that Kohl had been 'shafted', and terminated without cause:

Q You write, "Wow is he in for a shocker. I like him so much and feel badly for him. What a shaft." What are you referring to there?
A I thought he should have been offered a settlement instead of being fired, a settlement on his contract, and I liked him and I felt badly.

Id. at p. 51, lines 16-23

38. Attached herein as **Exhibit F** is a true and correct copy of the email presented to Eleanora in the Deposition and referred to as 'plaintiff's exhibit 9'.

39. As the Deposition progressed, David Kohl's counsel introduced 'plaintiff's exhibit 15,' an email from Eleanora which reveals that Eleanora believed that not only was Kohl terminated without cause, but also terminated under false pretense:

> Q If you look at the third
> paragraph of your e-mail you said, "I
> worked all morning helping the lawyer
> frame the firing letter. The gang of
> three put in so much bullshit that we
> would have been laughed out of any court
> or hearing."
> When you say, "I worked all
> morning helping the lawyer frame the
> firing letter," do you recall working
> with a lawyer to draft a firing letter?
> A No.

Id. at p. 51, lines 16-23.

40. Attached herein as **Exhibit G** is the email presented to Eleanora at the Deposition referred to as 'plaintiff's exhibit 15'.

41. This email evidence, as well as Eleanora's testimony in the Deposition, make clear that Eleanora omitted material facts regarding the Kohl Action in negotiating, drafting, and signing the Agreement, the Kohl Action being a key liability for the purchase of THC by HTC; moreover, Eleanora further testifies in the Deposition that the counterclaims in the Counterclaim Complaint, which Plaintiff relied on to litigate the Kohl Action, that relate to the causes of Kohl's termination, were, in her knowledge and belief, false and misleading.

42. Had HTC, as purchaser, known about these omissions regarding Kohl's termination, HTC would have demanded extended negotiations to uncover the facts of the Kohl Action and

renegotiate the purchasing price of the THC to reflect the true liability which could result from the Kohl Action.

43. In the Deposition, Kohl's counsel introduces 'plaintiff's exhibit 21,' an email from Eleanora which states she did not believe Kohl could be terminated for job performance reasons:

```
        Q       Focusing on your e-mail, Ms.
    Kennedy, you say, "David was hired to
    come and spend all of the money we were
    making in 2014 to grow the company with
    his vision and experience.  The bottom
    dropped out from seven months of
    disasters.  This is not his fault."
                First of all, let me ask you,
    was 2014 a good year financially for the
    company?
        A       Yes.
        Q       And why was that?
        A       Because we had profit.
```

Exhibit D, p. 120, line 1 to p. 121, line 19.

44. Attached herein as **Exhibit H** is email entitled 'plaintiff's exhibit 21' presented to Eleanora at the Deposition.

45. Eleanora testified in the Deposition that she believed Kohl's performance in growing the High Times Growth and High Times Venture was not a valid cause for Kohl's termination, in direct contradiction to Paragraph 18 of the Counterclaim Complaint:

Q Have you seen the agreement
that created the High Times Growth Fund?
A No.
Q What about the High Times
Venture?
A That I don't know about.
Q What is your basis then for
saying that he was tasked with developing
those?
A They asked him to raise money
for the growth fund. I remember that
clearly. He also went on a trip to
Dubai. We paid part of his air, I
believe. He had his own business there
that he was working on and at the same
time he was going to reach out to the
people he was working with on his own
business to support the growth fund or

Page 130

E. KENNEDY
invest in the growth fund.
Q Okay. Let me ask you this:
If he's hired to develop these funds and
he fails, do you believe that constitutes
a reason for his termination?
A Do I believe that's why he
should have been terminated?
Q Right.
A No.

Exhibit D, p. 129, lines 8-25 to p. 130, lines 1-10

46. Additionally, Eleanora testified in the Deposition that Kohl did not loot THC's assets, in direct contradiction to Paragraphs 27, 28, 29, and 30 of the Counterclaim Complaint:

Page 89

E. KENNEDY

A Correct.

Q So I'm asking you to testify based on that. I'm not asking you to testify based on anything Mr. Bauchner told you. Okay. So I'm asking you again. What were the exaggerations that you recall that happened other than the first class travel?

A I mentioned the taxi cab use, the coffee in the morning. They were blown out of proportion, as I recall it, in this dining. Dining was the coffee in the morning. It was just padded, heavily padded on the things I knew about. All the other accusations, which I didn't know about because I wasn't part of the working staff during those months, they all knew better than I did. They worked with him and I was basically absent during Michael's illness. So their accusations I couldn't comment on, but the few things I did know about were really blown out of proportion. Those are the ones that I can recall right now.

Exhibit D, p. 89, lines 1-25.

47. Eleanora had reason to deceive HTC to complete the purchase and sale of THC's stock under the terms of the Agreement.

48. Eleanora testified in the Deposition that she deeply yearned to sell her interest in THC and 'get out', as the passing of her late husband, Michael Kennedy, motivated her to sell her interest in the THC:

Q The second paragraph of the
e-mail, you write, "Michael and I are
pushing for a sale of 51 percent." What
does that refer to? This is an e-mail
dated December 6, 2016.
A Yes. We wanted to sell our
shares in the company, the Baker and the
Kennedy's, to an outside company to come
in and take the 51 percent.
Q Why?
A Michael was dying. Judy's son
had just died. Her uncle had just died.

Page 106

E. KENNEDY

She was old. She's older. She's in her
late 70s. We wanted to get out.
Michael's work was finished and he knew
he was going to die. He put someone in
place and that was it.
Q When you say "get out," you
did not want to get completely out, you
wanted to retain some shares in the
company still, right?
A I don't remember. We only had
51 percent. So if we both had 51
percent, we would be out.

Exhibit D, p. 105, lines 14-25 to p. 106, lines 1-13.

49. Plaintiff was deceived and reasonably relied on the disclosures in the Agreement and those allegations contained in the publicly filed Counterclaim Complaint at the time it entered into the Agreement.

50. Plaintiff settled the Kohl Action paying David Kohl a substantial sum, pursuant to a confidential settlement agreement, in an amount far in excess of $75,000.00 (i.e. the Diversity Jurisdictional limit of this Court).

**V.**

**COUNT ONE**

(Fraud by Misrepresentation)

51. Plaintiff adopts and incorporates by reference each of the allegations contained in Paragraphs l through 50 above as if fully set forth herein.

52. At the time of the Agreement, various material representations were made to HTC as part of its purchase of THC.

53. These were representations that would lead a reasonable person to believe that the allegations that were contained in the Counterclaim Complaint were truthful and accurate.

54. Eleanora, through the written representations contained in the Agreement and the Agreement's Disclosure Schedule, affirmatively represented to Plaintiff that valid grounds existed for the termination of David Kohl, and that, in fact, valid grounds existed for THC's counterclaims against David Kohl, as claimed in the Counterclaim Complaint (the "Misrepresentations").

55. The Misrepresentations were, in fact, false when made.

56. Eleanora acted with scienter when making the Misrepresentations. The attached emails in Exhibits F, G and H, which were not disclosed to HTC prior to its purchase of THC in December 2016, demonstrate Defendant Eleanora knew the Misrepresentations were, in fact, false, prior to entering into the Agreement and making the Misrepresentations.

57. Moreover, Eleanora, in the sworn Deposition, further testified to the falsity of the Misrepresentations years after entering into the Agreement.

58. Eleanora had intent to defraud and induce reliance on Plaintiff.

59. Eleanora knew that providing Plaintiff with a true accounting of the defenses in the Kohl Action would have, at a minimum, lead to a several million-dollar reduction in the purchase price under the Agreement, and very likely could have caused HTC to walk away from the deal entirely.
60. Because the Kohl Action involved a multi-million-dollar employment contract with THC's former chief executive officer, knowing the truth behind the validity of THC's defenses in the Kohl Action was essential to HTC properly valuing the purchase of THC.
61. In addition to monetary liability which would have reduced the purchase price HTC was willing to pay for THC by several million dollars, HTC would likely have decided not to purchase THC as a result of potential bad publicity that was likely to arise from the lawsuit.
62. Plaintiff actually did reasonably rely on the Misrepresentations made by Eleanora.
63. Plaintiff, then as purchaser of THC, had no means readily available to it to discover the truth behind the Misrepresentations, and as such, entered into the Agreement in reasonable reliance on Eleanora's Misrepresentations.
64. As a direct and proximate result of Eleanora's fraud, Plaintiff suffered damages.
65. Plaintiff purchased THC with an inflated price of $42,000,000, given the monetary liability of the Kohl Action.
66. As a direct and proximate result of Eleanora's fraud, Plaintiff was damaged by the amount of time, effort and company assets that went toward defending the Kohl Action, which could otherwise have been used to grow HTC's business.
67. As a direct and proximate result of Eleanora's fraud, Plaintiff was damaged by the substantial sum of stock and cash paid to David Kohl in order to settle the Kohl Action.
68. As a result of Eleanora's fraud against Plaintiff, Plaintiff suffered compensatory, general and/or special damages in an amount to be determined at trial, but in no event less than $10,000,000.
69. Trust 1, Trust 2 and Trust 3 are liable as the predecessor-in-interest to the Michael Kennedy Trust, which reaped the direct benefit of Eleanora's scheme.

**COUNT TWO**

(Fraud by Omission of Material Facts with Intent to Deceive)

70. Plaintiff adopts and incorporates by reference each of the allegations contained in Paragraphs l through 69 above as if fully set forth herein.

71. The Counterclaim Complaint alleges, in whole and in part, that David Kohl was terminated as chief executive officer of THC for cause.

72. These allegations in the Counterclaim Complaint were incomplete, false, and misleading.

73. Eleanora, in the Deposition, comes forth with material facts omitted from the Counterclaim Complaint.

74. In the Deposition, Eleanora testified she believed that Kohl was not terminated for cause, at the time she represented in the Agreement that Kohl was terminated for cause.

75. Eleanora acted with scienter. The attached emails in Exhibits F, G and H, which were not disclosed to Plaintiff prior to its purchase of THC in December 2016, demonstrate Eleanora knew the allegations in the Counterclaim Complaint were incomplete, false, and misleading and that the disclosures made to HTC at the time the Agreement was signed were incomplete, false and misleading.

76. Eleanora had intent to defraud and induce reliance on Plaintiff.

77. Eleanora knew that providing Plaintiff with a true accounting of the defenses in the Kohl Action and providing the information that was omitted from Schedule 3.7 of the Agreement would have, at a minimum, lead to a several million-dollar reduction in the purchase price under the Agreement, and would more than likely have caused HTC to walk away from the deal entirely.

78. Because the Kohl Action involved a multi-million dollar employment contract with THC's former chief executive officer, knowing the truth behind validity of THC's defenses in the Kohl Action was essential to HTC properly valuing the purchase of THC.

79. In addition to monetary liability which would have reduced the purchase price HTC was willing to pay for THC by several million dollars, HTC would likely have decided not to purchase THC as a result of potential bad publicity that was likely to arise from the lawsuit.

80. Eleanora had a duty to disclose these material facts omitted, related to the causes to terminate Kohl at the time of entering into the Agreement, per the Agreement, Article II: § 2.12.

81. Eleanora had superior knowledge of the information related to the Kohl Action, as Plaintiff, at the time a purchaser of THC, was uninvolved in any business dealings of THC prior to the Agreement.

82. Eleanora knew of and believed that Kohl was not terminated for cause, and knew Plaintiff would rely on false and incomplete disclosures to purchase THC at an inflated value, without properly factoring in the liability from the Kohl Action.

83. Plaintiff, then as purchaser of THC, had no means readily available to it to discover the truth behind the Kohl's termination, and as such, entered into the Agreement in reasonable reliance on the incomplete, false, and misleading Agreement's disclosure schedule and Counterclaim Complaint.

84. As a direct and proximate result of Eleanora's fraud, Plaintiff suffered damages.

85. Plaintiff purchased THC with an inflated price of $42,000,000, given the monetary liability of the Kohl Action.

86. As a direct and proximate result of Eleanora's fraud, Plaintiff was damaged by the amount of time, effort and company assets that went toward defending the Kohl Action, which could otherwise have been used to grow HTC's business.

87. As a direct and proximate result of Eleanora's fraud, Plaintiff was damaged by the substantial sum of stock and cash paid to David Kohl in order to settle the Kohl Action.

88. As a result of Eleanora's fraud against Plaintiff, Plaintiff suffered compensatory, general and/or special damages in an amount to be determined at trial, but in no event less than $10,000,000.

89. Trust 1, Trust 2 and Trust 3 are liable as the predecessor-in-interest to the Michael Kennedy Trust, which reaped the direct benefit of Eleanora's scheme.

## VI.

## JURY TRIAL DEMAND

90. Plaintiff demands a trial by jury.

VII.

**PRAYER FOR RELIEF**

WHEREFORE, these premises considered, Plaintiff HIGHTIMES HOLDING CORP. prays for judgment against Defendant ELEANORA KENNEDY, MICHAEL KENNEDY FAMILY TRUST UNDER SECTION 2.4 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE), NON-EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE) and EXEMPT MARITAL TRUST UNDER SECTION 2.3 OF THE MICHAEL KENNEDY REVOCABLE TRUST (ELEANORA KENNEDY, TRUSTEE), as follows:

(a) On the First Count, for compensatory, general and/or special damages in an amount to be proven at trial and presently estimated to be not less than $10,000,000;

(b) On the Second Count, for compensatory, general and/or special damages in an amount to be proven at trial and presently estimated to be not less than $10,000,000;

(b) For punitive and exemplary damages;

(c) For prejudgment interest;

(d) For costs of suit incurred herein, including reasonable counsel fees; and,

(e) For such other and further relief as the Court may deem just and proper.

Date: October 27, 2022

KAPIN PLLC

Michael J. Kapin
Attorneys for Plaintiff
HIGHTIMES HOLDING CORP.